**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| LACY SHEA WOOD,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:14-CV-00244-VEB<br><br>DECISION AND ORDER |

## I. INTRODUCTION

In September of 2010, Plaintiff Lacy Shea Wood applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act. The Commissioner of Social Security denied the applications.

Plaintiff, represented by Dana C. Madsen, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 7).

On April 29, 2015, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 19).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for DIB and SSI benefits on September 10, 2010. (T at 258-59, 260-68).[1] The applications were denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On March 5, 2013, a hearing was held before ALJ Marie Palachuk. (T at 57). Plaintiff appeared with an attorney and testified. (T at 73-90). The ALJ also received testimony from two medical experts, Dr. John Morse (T at 62-66) and Dr. Jay Toews (T at 66-71) and a vocational expert, Deborah LaPoint. (T at 91-94).

[1] Citations to ("T") refer to the administrative record at Docket No. 12.

On April 11, 2013, the ALJ issued a written decision denying the applications for DIB and SSI benefits. (T at 17-50). The ALJ's decision became the Commissioner's final decision June 2, 2014, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

On July 29, 2014, Plaintiff, acting by and through her counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 4). The Commissioner interposed an Answer on September 29, 2014. (Docket No. 12).

Plaintiff filed a motion for summary judgment on March 16, 2015. (Docket No. 17). The Commissioner moved for summary judgment on April 27, 2015. (Docket No. 18). Plaintiff filed a reply brief on May 18, 2015. (Docket No. 21).

For the reasons set forth below, the Commissioner's motion is granted, Plaintiff's motion is denied, and this case is closed.

## III. DISCUSSION

### A. Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii).                                    If plaintiff does not

have a severe impairment or combination of impairments, the disability claim is

denied. If the impairment is severe, the evaluation proceeds to the third step, which

compares plaintiff's impairment with a number of listed impairments acknowledged

by the Commissioner to be so severe as to preclude substantial gainful activity. 20

C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If

the impairment meets or equals one of the listed impairments, plaintiff is conclusively

presumed to be disabled. If the impairment is not one conclusively presumed to be

disabling, the evaluation proceeds to the fourth step, which determines whether the

impairment prevents plaintiff from performing work which was performed in the past.

If a plaintiff is able to perform previous work he or she is deemed not disabled. 20

C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual

functional capacity (RFC) is considered. If plaintiff cannot perform past relevant

work, the fifth and final step in the process determines whether plaintiff is able to

perform other work in the national economy in view of plaintiff's residual functional

capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

        The initial burden of proof rests upon plaintiff

to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*,

438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B. Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

(1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**C. Commissioner's Decision**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 14, 2007 (the alleged onset date) and met the insured status requirements of the Social Security Act through March 31, 2012 (the date last insured). (T at 22). The ALJ found that Plaintiff's history of Wolff-Parkinson-White disease (not recurrent), morbid obesity, hypertension, non-insulin dependent diabetes mellitus, obstructive sleep apnea, degenerative joint disease of the lumbar spine and left knee, mixed adjustment disorder, and polysubstance abuse/dependence were "severe" impairments under the Act. (Tr. 22).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 23).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567 (b), with the following limitations: only occasional postural activities; no climbing of ladders/ropes/scaffolds and no kneeling; avoid concentrated exposure to heat, humidity, vibration, and hazards; able to understand, remember, carry out simple/routine/repetitive tasks and instructions and well-learned, more complex tasks;

can have only superficial contact (i.e. non-cooperative, non-collaboration) interactions with public, supervisors, and co-workers. (T at 26).

The ALJ concluded that Plaintiff could perform her past relevant work as a billing clerk, counter attendant, and cashier II. (T at 42). Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act between February 14, 2007 (the alleged onset date) and April 11, 2013 (the date of the decision) and was therefore not entitled to DIB or SSI benefits. (T at 43). As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

**D. Plaintiff's Argument**

Plaintiff contends that the Commissioner's decision should be reversed. In particular, she contends that the ALJ did not properly assess the medical opinion evidence. This Court will review that evidence and address the ALJ's consideration of the applicable opinions.

## IV. ANALYSIS

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d

587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)(quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*.

**A. Dr. Morse**

Dr. John Morse, a non-examining medical expert, testified at the administrative hearing. He opined that Plaintiff's impairments, considering individually and collectively, did not meet or equal any of the impairments set forth in the Listings. (T at 63). Dr. Morse concluded that Plaintiff could lift 10 pounds frequently and 20 pounds occasionally and sit/walk/stand for 6 hours in an 8-hour day. He assessed no

manipulative limitations. (T at 64). He found that Plaintiff needed to avoid concentrated exposure to hazard, machinery, and heights. (T at 64).

The ALJ afforded "significant weight" to Dr. Morse's opinion, although the ALJ slightly increased Plaintiff's environmental limitations (finding that she must also avoid concentrated exposure to heat, humidity, and vibration), to better account for her obesity and diabetes. (T at 38).

Plaintiff challenges the ALJ's decision, suggesting that Dr. Morse's opinion was flawed because he failed to consider the fact that Plaintiff was experiencing symptoms of radiculopathy into her legs. In particular, Plaintiff contends that Dr. Morse's testimony, under cross-examination from her counsel, shows that the medical expert did not consider the results of a November 2009 MRI, which showed a protrusion at the L3-4 level encroaching the left neural foramin. (T at 64-65). However, Dr. Morse's testimony revealed that he had, in fact, considered the MRI results, but determined that the objective record did not support the suggestion of radiculopathy. In particular, Dr. Morse acknowledged the imaging findings, but noted the absence of a "clinical correlation," such as neurological deficits, motor weakness, or sensory deficits. (T at 65). Thus, Plaintiff's contention that Dr. Morse failed to consider the November 2009 MRI is simply contradicted by the record. Plaintiff also seems to suggest that the ALJ should have afforded greater weight to the

MRI results and Plaintiff's subjective complaints, while giving lesser weight to the medical expert's assessment of the overall record and clinical findings.  However, it is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Richardson*, 402 U.S. at 400.  If the evidence supports more than one rational interpretation, this Court may not substitute its judgment for that of the Commissioner. *Allen v. Heckler*, 749 F.2d 577, 579 (9th 1984). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the Commissioner's finding is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Here, the ALJ's finding was supported by substantial evidence and should be sustained.

**B.    Dr. Toews**

Dr. Jay Toews, a non-examining medical expert, also testified at the administrative hearing.  After reviewing the record, Dr. Toews concluded that Plaintiff's mental health impairments did not meet or equal any of the Listings impairments.  (T at 70).  He assessed no limitation as to activities of daily living, moderate limitation with regard to social functioning, and mild limitation with respect to maintaining attention, concentration, persistence, and pace. (T at 70).  Dr. Toews testified that he saw no evidence in the record to support a diagnosis of PTSD. (T at

70-71). He opined that Plaintiff could perform tasks that she had learned and had the opportunity to practice. (T at 71-72). Dr. Toews also found that Plaintiff was capable of superficial interactions and could sustain interactions with familiar co-workers. (T at 72).

The ALJ gave "significant weight" to Dr. Toews's assessment. (T at 39). Plaintiff challenges this decision, contending that Dr. Toews placed too much emphasis on the opinion of Dr. Joyce Everhart (a consultative examiner) and gave insufficient weight to Plaintiff's treating sources.

Dr. Everhart conducted a consultative examination in February of 2011. She found "clear evidence of malingering," including clinical test scores. (T at 759). Dr. Everhart assigned a Global Assessment of Functioning ("GAF") score[2] of 60 (T at 761), which is indicative of moderate symptoms or difficulty in social, occupational or educational functioning. *Amy v. Astrue*, No. CV-11-319, 2013 U.S. Dist. LEXIS 2297, at *19 n.2 (E.D.Wa Jan. 7, 2013). Dr. Everhart found no limitation as to activities of daily living, described Plaintiff as "mildly depressed and mildly anxious," and assessed that Plaintiff's attention, concentration, and intellectual abilities were

---

2 "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

within normal limits. (T at 762). She opined that Plaintiff could understand, remember, and follow simple directions. (T at 762).

Plaintiff asserts that Dr. Toews's opinion was flawed because he should have given less weight to Dr. Everhart's findings and more weight to the assessments provided by various treating, non-acceptable medical sources. However, as discussed below, this Court finds that the ALJ gave germane reasons for discounting the opinions provided by the non-acceptable sources. Likewise, this Court finds no error in Dr. Toews's decision to afford greater weight to Dr. Everhart's opinion (which was based on a mental status examination and testing), in the context of the overall record, and (in turn) no error with respect to the ALJ's decision to give significant weight to Dr. Toews's opinion. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)(holding that if evidence reasonably supports the Commissioner's decision, the reviewing court must uphold the decision and may not substitute its own judgment).

**C. "Other Source" Evidence**

In evaluating a claim, the ALJ must consider evidence from the claimant's medical sources. 20 C.F.R. §§ 404.1512, 416.912. Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 404.1502. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 404.1502.

Medical sources classified as "not acceptable" (also known as "other sources") include nurse practitioners, therapists, licensed clinical social workers, and chiropractors. SSR 06-03p. The opinion of an acceptable medical source is given more weight than an "other source" opinion. 20 C.F.R. §§ 404.1527, 416.927. For example, evidence from "other sources" is not sufficient to establish a medically determinable impairment. SSR 06-03p.

However, "other source" opinions must be evaluated on the basis of their qualifications, whether their opinions are consistent with the record evidence, the evidence provided in support of their opinions and whether the other source is "has a specialty or area of expertise related to the individual's impairment." *See* SSR 06-03p, 20 CFR §§404.1513 (d), 416.913 (d). The ALJ must give "germane reasons" before discounting an "other source" opinion. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

In this case, the record contains four "other source" opinions, rendered by three providers. In March of 2011, Piper Warwich, a mental health counselor, diagnosed bipolar I disorder and reported that Plaintiff struggled with mood lability, inconsistent use of healthy coping skills, low self-esteem, poor stress management, difficulty with sleep, and periods of low energy. (T at 817). She indicated that Plaintiff had difficulty

with completing tasks and follow-through, which "greatly impacts her ability to find and maintain a job." (T at 817).

In April of 2011, Roy Cantu, a physician's assistant, opined that Plaintiff had "multiple co-morbid conditions" that "limit and impact her ability to discharge various duties . . . ." (T at 821). He stated that she could not participate in work activities and with regard to lifting and carrying opined that she was limited to sedentary work. (T at 821-22). Mr. Cantu completed another assessment in April of 2012, in which he offered essentially the same opinion. (T at 825-26).

In December of 2012, Kathryn Ormsby, a nurse practitioner, noted diagnoses of bipolar illness, lumbar back pain, diabetes mellitus, hypertension, and obesity. (T at 829). She opined that Plaintiff was limited to sedentary work. (T at 830).

The ALJ noted gave "little weight" to these "other source" opinions, finding that they were not supported by objective findings and appeared to be based primarily on Plaintiff's subjective complaints, which the ALJ concluded were not fully credible. In addition, the "other source" opinions were contradicted by the assessments of Dr. Toews and Dr. Morse, the medical experts who reviewed the record and testified at the administrative hearing, and the assessment of Dr. Everhart, a consultative examiner. These are germane reasons sufficient to support the ALJ's decision to discount the "other source" opinions. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1044-

45 (9th Cir. 2007)(ALJ is not obligated to accept opinion that is "brief, conclusory and inadequately supported by clinical findings"); *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995)(lack of medical support for an opinion based substantially on a claimant's subjective complaints of pain is a legitimate reason for discounting that opinion); *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004) (opinion may be rejected when it is "contradicted by other statements and assessments of [a claimant's] medical condition").

**D. Dr. Arnold**

Dr. John Arnold, a clinical psychologist, performed a consultative psychological assessment in March of 2013. Dr. Arnold diagnosed major depression (recurrent, moderate to severe), pain disorder (with both psychological factors and a general medical condition), anxiety (NOS with PTSD/Social Features), and Borderline Personality Disorder (with Histrionic and Antisocial Features). (T at 933). He assigned a GAF score of 50, which is indicative of serious impairment in social, occupational or school functioning. *Onorato v. Astrue*, No. CV-11-0197, 2012 U.S. Dist. LEXIS 174777, at *11 n.3 (E.D.Wa. Dec. 7, 2012).

Dr. Arnold assessed marked limitations as to Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being

distracted by them; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (T at 935). He assessed a severe limitation as to Plaintiff's ability to accept instructions and respond appropriately to supervisors and a marked limitation to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (T at 935).

The ALJ gave little weight to Dr. Arnold's opinion, finding it inconsistent with the balance of the evidence. (T at 41). The ALJ's decision was well-supported. Dr. Everhart, another consultative examiner, found "clear evidence of malingering," assessed no limitation as to activities of daily living, described Plaintiff as "mildly depressed and mildly anxious," and concluded that Plaintiff's attention, concentration, and intellectual abilities were within normal limits. (T at 759, 762). She opined that Plaintiff could understand, remember, and follow simple directions. (T at 762). Dr. Toews, another medical expert, reviewed the record and concluded that Plaintiff had no limitation as to activities of daily living, moderate limitation with regard to social functioning, and mild limitation with respect to maintaining attention, concentration, persistence, and pace. (T at 70). He opined that Plaintiff could perform tasks that she had learned and had the opportunity to practice. (T at 71-72). Dr. Toews also found that Plaintiff was capable of superficial interactions and could sustain interactions with

familiar co-workers. (T at 72). Dr. Samantha Chandler, another consultative examiner, completed an assessment in 2008, in which she described Plaintiff's difficulties with memory and concentration as "slight, found that her ability to reason and use appropriate judgment were "good," and interact with public and co-workers. (T at 446).

In light of the foregoing, this Court finds no error with respect to the ALJ's decision to discount Dr. Arnold's opinion.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of the treating and examining medical providers and medical experts, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering a decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, the Commissioner is GRANTED summary judgment and that Plaintiff's motion for judgment summary judgment is DENIED.

## V. ORDERS

IT IS THEREFORE ORDERED that:

Plaintiff's motion for summary judgment, Docket No. 17, is DENIED.

The Commissioner's motion for summary judgment, Docket No. 18, is GRANTED.

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of the Commissioner, and close this case.

DATED this 21st day of December, 2015.

/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE